IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOSEPH RICHARD BERTELS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:12-CV-04004-NKL ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER**

Plaintiff Joseph Bertels seeks review of the Administrative Law Judge ("ALJ")'s decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. [Doc. # 1]. For the reasons set forth below, the decision of the ALJ is AFFIRMED.

**I. Background[1]**

    **A. Medical History**

On May 15, 2005, Bertels was admitted to St. Mary's Health Center with significant rectal bleeding. Doctors discovered a visible, low-lying rectal tumor, diagnosed him with rectal carcinoma, and recommended preop radiation chemotherapy and a surgical resection. Bertels finished his radiation therapy on July 5, 2005, and underwent a low anterior resection on August 9, 2005. The surgery and

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

1

chemoradiotherapy program were successful. As of April 7, 2006, there was no evidence of recurrence. On September 22, 2006, Dr. Fishel Liberman, Radiation Oncologist, described Bertels as "disease-free."

On July 27, 2010, Bertels underwent a colonoscopy with biopsies of the rectum and snare removal of polyps in the cecum. The biopsies showed no evidence of dysplasia or malignancy. That day, Bertels reported having some looser stools and spending more time in the restroom. The examining physician suggested that this might be caused by the medication Bertels was taking for his diabetes. On November 16, 2010, Bertels' primary care physician, Dr. James Weiss, diagnosed him with anal incontinence. During an examination on February 16, 2011, Dr. Weiss noted no gastrointestinal problems and did not mention anal incontinence in his assessment.

On March 26, 2009, Bertels had shoulder surgery for a torn right rotator cuff and right shoulder impingement. After the surgery, Bertels participated in physical therapy. During an examination on August 11, 2009, Bertels reported weakness in his shoulder but denied having any pain or stiffness and stated that he had adapted to using his shoulder normally at work. The examining doctor determined that Bertels had reached maximum medical improvement and released him to full work duties as needed.

On August 17, 2010, Dr. Ruth Stoecker performed a consultative examination of Bertels at the request of Disability Determinations Services and completed a Physical Residual Functional Capacity Assessment. Dr. Stoecker concluded that Bertels could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for six hours in an eight hour day, and sit for six hours in an eight hour day. Dr.

2

Stoecker indicated that Bertels' right shoulder had limited external rotational ability, which limited his ability to reach in all directions, but otherwise had excellent abduction and flexion with that shoulder. Regarding Bertels' colon cancer and incontinence, Dr. Stoecker remarked that Bertels had Stage III colon cancer, not Stage IV as he reported to Disability Determinations. Dr. Stoecker noted that Bertels had no recurrence and did not have a stricture based on a recent colonoscopy. Though Bertels reported needing to be near a bathroom, he was also taking the anti-constipation medications Metamucil and senakot, and had melanosis coli, which was consistent with laxative abuse. Based on Bertels' treatment records, Dr. Stoecker concluded that this was a non limiting resolved condition with no documented limitation on physical functioning.

On May 6, 2011, Dr. Weiss completed a Medical Source Statement – Physical ("MMSP") for Bertels. Dr. Weiss indicated that Bertels could: lift and/or carry twenty-five pounds frequently and occasionally; stand and/or walk continuously for two hours and for a total of four hours in an eight hour day; and sit continuously for two hours and for a total of four hours during an eight hour day. Dr. Weiss also indicated that Bertels could reach occasionally. The MSSP did not mention incontinence.

### B. Administrative Hearing Testimony

At the administrative hearing, Bertels testified that he was five feet, eight inches tall and weighed two hundred and eighty pounds. He lived alone in a duplex, did not do yard work, and had a cleaning lady come to his house twice a month to do chores. Around the house, Bertels would load and unload the dishwasher, make his bed, and

3

Case 2:12-cv-04004-NKL   Document 9   Filed 12/10/12   Page 3 of 15

cook. He did his own grocery shopping and drove without difficulty. He used a computer to manage his bank accounts and e-mail.

Bertels was not working and was paying his bills with unemployment benefits and a state pension. He was also receiving payments from a worker's compensation settlement related to his right shoulder injury. From April 2007 to March 2010, Bertels was the owner/manager of a convenience store. He also previously worked as a workers' compensation investigator. Bertels sold his convenience store in March 2010, partly due to the economy and partly due to his physical troubles managing it, and began receiving unemployment benefits around that time. He testified that he was actively seeking work and applying for jobs.

Bertels testified that the main reason he could not work a full-time job was because of his bowel issues, which arose after his surgery for colon cancer. He testified that he does not know when this problem is going to strike and that when it does, he could spend as much as one to three hours going to the bathroom. On some days, he would not use the bathroom at all; on others, he might use it as much as six to eight times. On average, Bertels reported having bowel issues four days per week. He sometimes took Imodium AD for this problem. This would help for one day, but then things would be worse the next day. He denied taking any other medications for this issue. Bertels testified that he had really bad days a couple of times each week, during which he would not leave the house.

Regarding his right shoulder injury, Bertels testified that he still had weakness in that shoulder and that there were some positions he couldn't move it to anymore. He

4

stated that he could only lift five or six pounds and had a limited range of motion with that shoulder.

A vocational expert ("VE") also testified at the hearing. The ALJ described a hypothetical individual who could perform the requirements of light exertion as defined in the Social Security Administration ("SSA") regulations, except the person needed ready access to a bathroom and could not do any overhead reaching with his right side. The VE testified that this person could perform Bertels' past relevant work as a retail manager and workers' compensation investigator.

### C. The ALJ's Decision

The ALJ concluded that Bertels had the Residual Functional Capacity ("RFC") to perform the requirements of light exertion as defined in the SSA regulations, with certain exceptions. The ALJ imposed several environmental limitations and limited Bertels to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The ALJ also determined that Bertels could never reach overhead with his right side and needed ready access to a bathroom. Based on these findings, the ALJ determined that Bertels was capable of performing his past relevant work as a workers' compensation investigator and manager of a retail business.

## II. Discussion

### A. Standard of Review

The Court will affirm the ALJ's decision denying benefits if it is supported by substantial evidence in the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence means less than a preponderance, but sufficient

5

evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). The Court must consider the evidence that supports the decision as well as the evidence contrary to it. *Finch*, 547 F.3d at 935. An administrative decision will not be reversed, however, simply because the Court might have reached a different conclusion. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). If, after reviewing the evidence, it is possible to reach two inconsistent positions and one of those positions represents the ALJ's findings, the Court must affirm the decision. *Id.*; *see also Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) ("Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision." (quotation omitted)).

### B. The Credibility Determination

Bertels argues that the ALJ erred in assessing his credibility and thereby failed to include his subjective allegations of disabling symptoms in the RFC determination. An ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole," and the Court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quotation omitted). In analyzing a claimant's credibility,

> [A]n ALJ must consider: (1) [T]he claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medications; (4) precipitating and aggravating factors; and (5) functional restrictions. Other factors also include the claimant's relevant work history and the absence of objective medical evidence to support the complaints.

6

*Id.* (quotation omitted). Although the ALJ must acknowledge and consider these factors, the ALJ "need not explicitly discuss each . . . factor." *Id.* (quotation omitted).

Bertels objects to the ALJ's reliance on his reported activities of daily living in evaluating his credibility. Specifically, the ALJ noted that Bertels lives alone in a duplex, loads and unloads the dishwasher, makes his bed, cooks, goes grocery shopping, drives, watches television, and regularly uses a computer to manage his bank accounts, send e-mails, and apply for jobs. [Tr. 16]. The ALJ found that Bertels' reported daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms." [Tr. 16]. As Bertels contends, these reported activities, standing alone, might not have supported a finding that Bertels was not disabled. *See, e.g.*, *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) ("The fact that [the claimant] tries to maintain her home and does her best to engage in ordinary life activities . . . in no way directs a finding that she is able to engage in light work."). But these activities were relevant as one factor in the ALJ's credibility analysis. *See, e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."). More importantly, this was only one of several factors the ALJ considered.

For instance, prior to discussing Bertels' daily activities, the ALJ summarized the objective medical evidence [Tr. 15], and correctly concluded that Bertels' subjective complaints were "out of proportion to and not supported by" these records [Tr. 16]. In addition, the ALJ noted that Bertels had been receiving unemployment benefits since the

7

second quarter of 2010. [Tr. 16]. An applicant for unemployment benefits presents himself as ready and able to work, which reflects poorly on his credibility when he simultaneously files for disability benefits, and thus claims to be unable to work, for the same period. *See Paschal v. Astrue*, 372 Fed. App'x 687, 688 (8th Cir. 2010) (finding the ALJ's credibility determination was supported by the claimant's application for unemployment benefits); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (same). Similarly, Bertels testified that he had been actively seeking work after his alleged disability onset date, which further detracts from his credibility. *Black*, 143 F.3d at 387. Finally, Bertels testified that his decision to sell his convenience store was motivated partly by the poor economy, which also supported the ALJ's credibility finding. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical conditions.").

In sum, the ALJ acknowledged the appropriate credibility factors [Tr. 14] and then explicitly set out the reasons for discrediting portions of Bertels' testimony [Tr. 15-16]. Where, as here, the ALJ expressly discredits a claimant's subjective allegations for good cause, the Court will not disturb the decision. *Goff*, 421 F.3d at 793; *see also Pearsall v. Massanari*, 274 F.3d 1211, 1218 ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").

### C. The RFC Determination

Bertels argues that the ALJ committed reversible error by arbitrarily determining his RFC. The ALJ "bears the primary responsibility for assessing a claimant's [RFC] based on all relevant evidence." *Wildman*, 596 F.3d at 969. The RFC is, however, "a

8

medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). But the ALJ "is not limited to considering medical evidence exclusively." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). For instance, the ALJ must evaluate the claimant's credibility before determining the claimant's RFC, and the results of the credibility analysis may influence the RFC decision. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). Ultimately, RFC is "an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619.

Bertels claims that the ALJ failed to provide a proper link between the limitations contained in Dr. Weiss' MSSP and the ALJ's final RFC determination. The ALJ gave "great weight" to Dr. Weiss' opinion, which indicated that Bertels could perform light work with some postural, manipulative, and environmental limitations. [Tr. 16]. The ALJ also considered the opinion of Dr. Stoecker, but concluded that other evidence in the record showed that Bertels was more limited than Dr. Stoecker suggested. [Tr. 16]. Ultimately, the ALJ determined that Bertels could perform the requirements of light exertion as defined in the SSA regulations, with certain exceptions. Specifically, the ALJ imposed several environmental limitations and limited Bertels to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The ALJ also determined that Bertels could never reach overhead with his right side and needed ready access to a bathroom. [Tr. 13]. Bertels maintains, however, that the ALJ's RFC differed substantially from Dr. Weiss' opinion.

In some respects, the ALJ's RFC determination was actually more restrictive than Dr. Weiss' opinion. Light work, as defined in the SSA regulations, "involves lifting no

9

more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). By contrast, Dr. Weiss indicated that Bertels could lift and/or carry up to twenty-five pounds frequently. [Tr. 315]. Light work may also involve "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Dr. Weiss found that Bertels' ability to push and/or pull (including hand and/or foot controls) was unlimited. [Tr. 315]. Dr. Weiss also indicated that Bertels could stand and/or walk continuously for two hours at a time, for a total of four hours in an eight hour day, and sit continuously for two hours at a time, for a total of four hours in an eight hour day. [Tr. 315]. Dr. Weiss' MSSP did not mention any limitations related to Bertels' claims of disabling incontinence.

To extent that the amount of sitting, standing, or walking required by light work exceeds the limitations imposed by Dr. Weiss, the record supported the ALJ's decision to depart from Dr. Weiss' opinion. There is no evidence in Bertels' treatment records that might reasonably support the walking, standing, and sitting limitations contained in Dr. Weiss' MSSP. The medical records show that Dr. Weiss' treatment of Bertels was primarily related to diabetes check-ups [Tr. 279-99, 308-13] with some sporadic mentions of issues with bowel movements [Tr. 290, 312]. There is no mention of treatment for any condition that might reasonably be expected to account for the limitations Dr. Weiss placed on Bertels' ability to walk, stand, or sit. Although a treating physician's opinion is ordinarily entitled to substantial weight, an opinion that is "not supported by medical diagnoses based on objective evidence [] will not support a finding

10

of disability." *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003); *see also Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) ("We have upheld an ALJ's decision to discount a treating physician's MSS where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records or treatment nor supported by any objective testing or reasoning." (quotation and alteration omitted)).

Nonetheless, the ALJ's RFC determination was based, at least in part, on the opinions of Dr. Weiss and Dr. Stoecker. This satisfies the requirement that the RFC finding be supported by some medical evidence. But the ALJ did not err in rejecting the portions of Dr. Weiss' opinion that were inconsistent with the record as a whole or unsupported by any objective medical evidence. *See Wildman*, 596 F.3d at 964 (holding that the ALJ properly discounted the treating physician's opinion because it consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration). Rather, the ALJ properly considered the entire record in determining Bertels' RFC. For instance, in addition to Dr. Weiss' opinion, the ALJ properly considered the opinion of Dr. Stoecker [Tr. 16], as well as Bertels' subjective complaints, to the extent they were deemed credible [Tr. 14-15].

Furthermore, and contrary to Bertels' suggestion, the ALJ expressly considered Bertels' obesity in the narrative discussion explaining the RFC determination. [Tr. 15-16]. Bertels argues that the ALJ erred by failing to explicitly discuss the limiting effects of his obesity when combined with his over impairments. But it is sufficient that the ALJ separately discussed Bertels' physical impairments, subjective complaints, and activities of daily living and then concluded, based on all the evidence, that Bertels was capable of

11

performing his past relevant work. *See Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* (quotation omitted). The ALJ considered all the relevant evidence in determining Bertels' RFC, and substantial evidence supports the ALJ's conclusion.

Bertels also argues that remand is required under *Pfitzner v. Apfel*, 169 F.3d 566 (8th Cir. 1999), because the ALJ only described Bertels' RFC in general terms. But this case is more analogous to *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003), where the court distinguished *Pfitzner* and affirmed the ALJ's RFC determination even though the ALJ did not make explicit finding as to the claimant's ability to sit, stand, or walk. The *Depover* court noted that it would have been preferable for the ALJ to have set out specific findings regarding these functions, but nonetheless found that the ALJ did not overlook these functions. *Depover*, 349 F.3d at 567. Because the record supported the ALJ's implicit conclusion that the claimant was unlimited in these abilities, the court did "not see any reason to remand to make the findings explicit." *Id.*

As in *Depover*, the ALJ in this case did make some specific findings regarding Bertels' RFC. *Compare Depover*, 349 F.3d at 567, *with* [Tr. 13]. In particular, the ALJ concluded that Bertels could: never reach overhead with his right side; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and needed ready access to a bathroom. [Tr. 13]. The ALJ also imposed numerous environmental restrictions. [Tr. 13]. The lifting and carrying requirements of light work, as discussed above, were well within Dr. Weiss' opinion about Bertels' RFC. While the ALJ did not

12

Case 2:12-cv-04004-NKL   Document 9   Filed 12/10/12   Page 12 of 15

make explicit findings on Bertels' ability to walk, stand, or sit, the ALJ did not err in concluding that Bertels was not limited in these functions to an extent that would prevent him from performing light work.

Only Dr. Weiss' unexplained checkmarks in the MSSP and Bertels' testimony, which the ALJ properly found not entirely credible, provided any evidence of any limitations with respect to these functions. By contrast, in *Pfitzner*, there was significant, credible, and apparently overlooked evidence about the claimant's ability to stand, such that "substantial evidence would not support a conclusion that [the claimant] suffered no physical limitations." *Pfitzner*, 169 F.3d at 568. Furthermore, at the stage of the disability analysis where Bertels claims the ALJ erred, the burden was on Bertels to prove that he was unable to perform his past relevant work. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). That Bertels failed to provide sufficient evidence to meet this burden does not compel remand so that the ALJ can make this implicit finding explicit. *See Depover*, 349 F.3d at 567-68. While it would have been preferable for the ALJ to explicitly discuss these functions, remand will not be granted "based on an arguable deficiency in opinion-writing technique that had no effect on the outcome of the case." *Willcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008) (quotation omitted).

### D.     The ALJ's Conclusion that Bertels Could Perform Past Relevant Work

Finally, Bertels claims that the ALJ erred by concluding that Bertels could perform his past relevant work without making explicit findings as to the physical and mental demands of his past work. An individual is not disabled if he can perform his past

13

relevant work, either as he actually performed the job or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b); SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982). The ALJ may rely on the testimony of a VE to determine whether a person with the claimant's physical and mental limitations could meet the demands of the claimant's previous work. 20 C.F.R. § 404.1560(b); *Masterson v. Barnhart*, 363 F.3d 731, 740 (8th Cir. 2004).

The ALJ's conclusion that Bertels was capable of performing his past relevant work was supported by substantial evidence. The ALJ relied on the testimony of the VE, who testified that Bertels' prior job as a retail manager was classified as light exertional, skilled work according to the Dictionary of Occupational Titles ("DOT"). [Tr. 43]. In addition, the VE testified that Bertels' prior position as a workers' compensation investigator constituted sedentary, skilled work according to the DOT. [Tr. 43]. The VE then testified that a person matching Bertels' age, education, and RFC could perform Bertels' past relevant work as a retail manager and investigator, as that work is generally performed in the national economy. [Tr. 44]. This provided a sufficiently explicit basis for the ALJ to conclude that Bertels was capable of performing his past relevant work as that work is generally performed in the national economy. *See Masterson*, 363 F.3d at 740 ("[T]he ALJ relied on the vocational expert's testimony regarding the level of exertion (heavy) Masterson's past job required . . . . Masterson claims that the ALJ failed to determine the specific mental and physical requirements of her past job—however, the ALJ's reference to her past work being 'heavy' work necessarily defined the parameters of the exertional level at which Masterson was working.").

14

## III. Conclusion

For the reasons set forth above, the decision of the ALJ is AFFIRMED.

s/ Nanette Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 10, 2012
Jefferson City, Missouri